685 F.2d 1083
 Fed. Sec. L. Rep. P 98,790
PACIFIC REALTY TRUST, Plaintiff-Appellee,
v.
APC INVESTMENTS, INC.; American Pacific Corporation; Campeau
Corporation; Campeau U. S.; The Pacific Company;
John E. Wertin; and Robert Campeau,
Defendants-Appellants.
 No. 82-3023.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 8, 1982.
Decided Aug. 27, 1982.
 
 Gregory Smith, Irell & Manella, Los Angeles, Cal., argued, for defendants-appellants; Mildred J. Carmack, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., Kenneth R. Heitz, Los Angeles, Cal., on brief.
 Barnes H. Ellis, Stoel, Rives, Boley, Frasure & Wyse, Portland, Or., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before TRASK, CHOY and SCHROEDER, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 APC Investments, Inc., appeals from an order permanently enjoining it from proceeding with its tender offer to the shareholders of Pacific Realty Trust (PacTrust). The district court held that the proposed tender offer violated § 14(e) of the Securities Exchange Act of 1934, as added by the 1968 Williams Act amendments,[1] and that supplemental disclosure by APC to the shareholders could not cure the violation. We leave the injunction intact, but remand for proceedings consistent with this opinion.
 
 I. Facts
 
 2
 In an effort to obtain control of PacTrust, APC initiated a tender offer to PacTrust shareholders. Allegedly because PacTrust might lose its special tax status as a real estate investment trust should a single investor gain control,[2] the trustees of PacTrust attempted to block the takeover by (1) enacting a bylaw prohibiting any shareholder from owning more than 9.8% of the stock in PacTrust, (2) suing in Oregon state court to enjoin APC from proceeding with the tender offer because it would result in a violation of the bylaw, and (3) suing in federal district court to enjoin the offer pending disclosure that would remedy alleged material misrepresentations made by APC.
 
 
 3
 A state trial court held that the bylaw is valid, but refused to enjoin APC from proceeding with the tender offer. (An appeal by APC of the decision upholding the bylaw is now pending in the Oregon courts.) A federal district court then held, in the decision on appeal here, that APC had failed to disclose that the offer could not be completed lawfully in the face of the bylaw adjudged valid by the state court.[3] The district court did not reach the other alleged material nondisclosures asserted by PacTrust.[4] Instead, reasoning that the bylaw blocked the lawful completion of the offer, the court permanently enjoined APC from proceeding with the offer and from attempting to acquire stock pursuant to it.
 
 
 4
 Both before and after the imposition of the unconditional permanent injunction, APC offered to make a supplemental disclosure about the bylaw. The district court concluded, however, that no disclosure could adequately protect the shareholders of PacTrust because no disclosure could remove the obstacle created by the bylaw.
 
 II. Remedies Under the Williams Act
 
 5
 APC asserts that the proper remedy for defects in a tender offer is to require full disclosure.[5] We agree that curative disclosure is the standard and, in general, the preferred remedy. In Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975), the Supreme Court explained: "The purpose of the Williams Act is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party."[6] Injunctions normally play a supporting role: a court enjoins the tender offer until it can decide whether the Act requires further disclosures, and until all required disclosures are made. See, e.g., Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 255 (2d Cir. 1973).
 
 
 6
 But no court has ever declared disclosure to be the exclusive remedy under the Williams Act. To the contrary courts have suggested that an unconditional permanent injunction against proceeding with a tender offer might be appropriate in at least two situations.[7] One deserves only brief mention here because it is clearly inapposite. In order to punish and thus deter intentional violations of the Act, a court might enjoin an offer when "the offeror willfully attempted to withhold information from the target company's shareholders." Ronson Corp. v. Liquifin Aktiengesellschaft, 370 F.Supp. 597, 610-11 n.36 (D.N.J.), aff'd, 497 F.2d 394 (3d Cir.), cert. denied, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 108 (1974). See Corenco Corp. v. Schiavone & Sons, Inc., 488 F.2d 207, 214 (2d Cir. 1973). The district court did not find that APC engaged in such misconduct.
 
 
 7
 The other situation concerns the prohibition in § 14(e) against "any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer." There are instances when violations of this antifraud provision are unrelated to the information supplied to the shareholders. In Mobil Corp. v. Marathon Oil Co., 669 F.2d 366 (6th Cir. 1981), for example, the target corporation, attempting to thwart a take-over bid, attracted a more desirable tender offeror by giving this "white knight" options to purchase its most valuable oil field and its common stock. The court held that by creating an artificial price ceiling for competing tender offerors, these "lock-up" options were manipulative acts which violated the Williams Act and could not be cured by disclosure. Id. at 374-77. See also Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977) ("manipulation" refers to practices "intended to mislead investors by artificially affecting market activity"). But the alleged misconduct here, unlike in Mobil, did not artificially affect market activity.
 
 
 8
 Nevertheless, PacTrust maintains that the attempt by APC to proceed with the tender offer in the face of the bylaw is a fraudulent, deceptive, or manipulative act which cannot be cured by disclosure. PacTrust reasons that the making of a tender offer that cannot be completed lawfully violates the antifraud provision of § 14(e). PacTrust cites no direct support for this construction of the Williams Act.
 
 
 9
 Its analysis more resembles that in Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687, 693-95 (2d Cir. 1973). The court there upheld a preliminary injunction against proceeding with a tender offer, in part because there was a substantial probability that the offer would result in an antitrust violation. The court did not discuss the issue in terms of the Williams Act. Rather, the issue was whether the Clayton Act required enjoining the offer. See also Elco Corp. v. Microdot Inc., 360 F.Supp. 741 (D.Del.1973). The parallel issue in the present controversy is whether the bylaw requires an injunction. PacTrust avoids framing its argument in those terms, however, because the state court has already refused to enjoin the possible violation of the bylaw. See supra at 1085 & n.3. In order to evade the obstacle of issue preclusion, PacTrust makes a novel Williams Act argument.
 
 
 10
 The only decision which gives any semblance of support to PacTrust's analysis is Riggs National Bank of Washington, D. C. v. Allbritton, 516 F.Supp. 164 (D.D.C.1981). The target corporation there, a national banking association, alleged that the tender offerors had not complied fully with the requirement of 12 U.S.C. § 1817(j)(1) that they notify the Comptroller of Currency of their intent to acquire control of an insured bank. In issuing a preliminary injunction, the court stated:
 
 
 11
 This is not simply a question of whether the Offer contains an untrue or misleading statement relative to the approval of the Comptroller of the Currency of his tender offer. If it were, a curative remedy could be fashioned. The Court is most concerned with the more significant issue of whether the defendant has actually complied with the Change in Bank Control Act as asserted in the Offering Circular, and has been authorized to proceed with the acquisition. Curative statements by defendant Allbritton cannot remedy this violation of the Williams Act under the circumstances of this Offer.
 
 
 12
 Id. at 182. If the injunction was appropriate, as to which we need not rule, we think that the court might better have framed its conclusion in terms of the Change in Bank Control Act instead of the Williams Act.
 
 
 13
 At any rate, we believe that full disclosure here would adequately protect the PacTrust shareholders as required by the Williams Act. The tender offer proposed by APC does not create a no-win predicament for the shareholders, where they can gain nothing by accepting or rejecting an offer that cannot be completed.
 
 
 14
 Most importantly, it is far from certain that APC cannot complete the proposed offer lawfully. The trustees of PacTrust passed the bylaw in order to protect the special tax status of the trust and, consequently, the financial interests of the shareholders. This is far more flexible than the statutory obstacle in Riggs. If PacTrust loses its tax status even without APC taking over, a likelihood according to a former Commissioner of Internal Revenue who testified at trial, the sole reason for the bylaw would disappear and, we assume, the trustees would rescind the bylaw. It is also possible that the shareholders will find the tender offer to be in their financial interest, call a special shareholders meeting, and vote to rescind the bylaw. Finally, no state appellate court has adjudged the bylaw to be valid. The state trial judge confessed his limited knowledge of securities law and conceded the substantial possibility of reversal on appeal.
 
 
 15
 Even if APC would subsequently have to divest itself of stock held in violation of the bylaw, the shareholders who accepted its tender offer would not necessarily forfeit the premium paid them. PacTrust has made no showing that state law would require rescission of purchases made pursuant to the offer. The more probable remedy is that APC would somehow have to dispose of the stock and suffer the loss itself. If APC discloses fully how the bylaw could affect the offer and those who accept it, the shareholders would have sufficient information to decide whether the potential benefits of accepting the offer outweigh the risks. We can find no insurmountable barrier to curative disclosure here.
 
 III. Adequate Disclosure
 
 16
 Having determined that disclosure can cure the Williams Act violation diagnosed by the district court, the remaining issue is whether APC made adequate disclosure. Because the record and arguments on appeal do not enable us to make this determination, we remand for further consideration by the district court.
 
 
 17
 In addition to objecting to APC's handling of the bylaw, PacTrust presented a number of Williams Act claims which the district court did not reach. It sought the disclosure of (1) the poor financial condition of APC and related parties, (2) APC's past practice of acquiring corporations through tender offers failing to make material disclosures, and then selling the target corporation's assets to finance the offer, (3) conflicting financial interests that may cause APC to mismanage PacTrust, (4) the fact that APC's ownership is pledged to another corporation, and (5) the possible loss by PacTrust of its special tax status should the tender offer be successful. The supplemental disclosure proffered by APC does not address these allegations. The alleged facts appear to be material. See TSC Industries v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (measuring materiality by whether fact's disclosure "would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available"). Because the record does not reveal whether the allegations are true, we must remand to allow the district court to make this determination.
 
 
 18
 Since a remand is necessary, we also instruct the district court to review and entertain objections to the supplemental disclosure about the possible effects of the bylaw that APC presented previously to the court. We have read the proposed supplement, and it seems to explain fairly what could happen if APC proceeds with the tender offer in the face of the bylaw. PacTrust may have suggestions that would improve the disclosure, however, which the district court can best evaluate.
 
 IV. Conclusion
 
 19
 Although the district court enjoined the tender offer for a reason with which we do not agree, an injunction is appropriate to maintain the status quo pending reconsideration by the district court of whether APC has made an adequate disclosure. We therefore leave the injunction intact, but remand for further proceedings consistent with this opinion.
 
 
 20
 REMANDED.
 
 
 
 [1]
 The Williams Act states in relevant part:
 It shall be unlawful for any person to make any untrue statement of a material fact in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.
 15 U.S.C. § 78n(e).
 
 
 [2]
 See 26 U.S.C. §§ 856-59 (providing tax benefits to small investors who combine to participate in commercial real-estate ventures)
 
 
 [3]
 APC argues at length that the district court resolved issues of state law which either it had no jurisdiction to resolve or the state trial court had already resolved to the contrary. We construe the actions of the district court otherwise. While the state court held that a possible future violation of the valid bylaw did not warrant issuing an injunction, the federal district court held that a present violation of the Williams Act (misleading shareholders about the legality of the tender offer) did. We find no jurisdictional barrier or issue preclusion
 
 
 [4]
 Discussed infra at 1087-1088
 
 
 [5]
 Several types of injunctions are possible in cases under the Williams Act. See, e.g., Securities and Exchange Commission v. Savoy Industries, 587 F.2d 1149, 1168-69 (D.C.Cir.) (against future failures to disclose), cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1978); Klaus v. Hi-Shear Corp., 528 F.2d 225 (against voting stock acquired in violation of the Williams Act). However, we direct our discussion here only to injunctions against proceeding with tender offers
 There must be a showing of irreparable harm, as traditional equitable principles require, to obtain any injunction under the Williams Act. Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 61-65, 95 S.Ct. 2069, 2077-2079, 45 L.Ed.2d 12 (1975). The parties here have stipulated that absent disclosure by APC about the bylaw, irreparable harm would result. We accept their stipulation and do not pass on the issue of irreparable harm.
 
 
 [6]
 See also Santa Fe Industries v. Green, 430 U.S. 462, 477-78, 97 S.Ct. 1292, 1302-03, 51 L.Ed.2d 480 (1977) (the fundamental objective of federal securities law is full disclosure); E. Aranow, H. Einhorn & G. Berlstein, Developments in Tender Offers for Corporate Control 134 (1977) ("Thus far, no court has totally enjoined the consummation of a tender offer based solely on the disclosure provisions of Sections 14(d) and (e)")
 
 
 [7]
 We review the situations in order to determine whether the case before us fits either of them. Because it does not, we express no opinion on when, if ever, an unconditional permanent injunction is appropriate in these situations. That issue is not before us