**Carol PLAINE, Plaintiff-Appellant,**

**v.**

**B.C. McCABE, Joseph W. Aidlin, Thomas C. Hinrichs, Frank M. Swirles, Andrew W. Hoch, B.C. McCabe, Jr., Magma Power Company, Natomas Company, Natomas Energy Company, NEC Acquisition Co., and Magma Geysers, Inc., Defendants-Appellees.**

**No. 83–6552.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1985.

Decided May 27, 1986.

As Amended on Granting of Rehearing Aug. 22, 1986.

---

Marc M. Seltzer (argued), Corinblit & Seltzer, Los Angeles, Cal., Robert A. Skir-

nick and Stephen D. Oestreich, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff-appellant.

Alan E. Friedman (argued), Tuttle & Taylor, Inc., Lorraine L. Loder and Jeffrey Z.B. Springer (argued), Demetriou, Del Guercio & Lovejoy, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, FLETCHER, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Carol Plaine, a former shareholder of Magma Power Company ("Magma"), brought suit against Natomas Company ("Natomas"), Magma, and various individual officers of both companies alleging violations of section 14(e) of the Securities and Exchange Act of 1934, as amended, 15 U.S.C. § 78n(e) (1982) ("the Act"), and state securities laws in connection with Natomas' tender offer to, and eventual merger with, Magma. The district court granted summary judgment to defendants, ruling that a decision of the California Corporations Commissioner ("Commissioner") that found the merger price fair collaterally estopped Plaine from proving injury, an essential element of her section 14(e) claim. We agree that collateral estoppel precludes Plaine from challenging the Commissioner's fairness finding, but conclude that such a finding does not foreclose Plaine from proving actual damages going beyond a fair merger price in her section 14(e)

claim. Therefore, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## FACTS

Natomas acquired Magma, a geothermal energy company, in a two-step transaction. The first step was a tender offer, after which Natomas held 83 per cent of Magma's outstanding shares. The second step was a freeze-out merger of the remaining Magma shareholders. Appellant Plaine was forced to give up her shares in the second part of this two-step transaction.

On March 30, 1981, Natomas, through a subsidiary, NEC Acquisition Co., made a cash tender offer for all of Magma's stock at $42 per share. Natomas issued an Offer to Purchase to all Magma shareholders in connection with the proposed tender offer. Magma's management initially opposed the offer, and Magma's chairman, B.C. McCabe, characterized the offer to reporters as "wholly inadequate." McCabe claimed that because of the substantial energy assets of the company, in particular its 25% interest in the Geysers Project (the Geysers),[1] the shares were worth at least $80 per share or perhaps as much as $200.[2] At that time, Magma retained the investment firm of Smith Barney which rendered an opinion that $42 per share was "inadequate from a financial point of view." Magma also contacted several potential "white knights"[3] but was unsuccessful in obtaining a counteroffer.

On April 16, 1981, Natomas and Magma began negotiations on the terms of the

---

1. Magma's interest in the Geysers was its principal asset and the focus of Natomas' interest in Magma. At the time of the initial offer, Magma was a joint venturer in the Geysers with Natomas and Union Oil. Magma and Natomas each had a 25 per cent interest and Union owned the remaining 50 per cent.

2. This comment gave rise to a lawsuit by Natomas against Magma and McCabe, charging violations of sections 13(d), 14(d), and 14(e) of the Act, 15 U.S.C. §§ 78m(d), 78n(d), and 78n(e) (1982), and seeking injunctive relief. The district court issued a temporary restraining order preventing Magma from making any public statements in connection with the inital offer

without prior court approval. As part of a later Agreement between the two companies, see infra, Natomas' suit was dismissed upon consummation of the merger.

3. A "white knight" is a "friendly" corporation located by the target company to make a tender offer at a price higher than that offered by the original "unfriendly" tender offeror. This is done in the hope that stockholders will be encouraged to sell their stock to the "white knight" at the higher price so that control of the corporation will not fall into the hands of the original offeror.

tender offer. Magma retained the firm of Drexel Burnham to render financial advice in connection with the offer. The discussions culminated in an Agreement in which Natomas amended its tender offer to $45 per share, and Magma management recommended acceptance of the tender offer and agreed to hold a shareholders' meeting for the purpose of approving a merger of the two companies. The Agreement provided that shareholders who did not tender their shares during the period of the tender offer would be entitled to receive $45 per share in the eventual merger.[4] The companies jointly sent all Magma shareholders a Supplement to the Offer to Purchase outlining the terms of the Agreement.

When the amended tender offer expired on May 5, 1981, Natomas owned a total of 8,289,197 shares, or 83 per cent of the total. At a meeting on February 5, 1982, the shareholders approved the merger by a vote of 99.26 per cent of the shares represented. Although the Agreement structured the vote so that Natomas' 83 per cent of the total shares guaranteed the outcome, a majority of the minority shares (93.78 per cent) were voted in favor of the merger. Following the vote, on March 1–3, 1982, the California Corporations Commissioner held a fairness hearing as required by Cal.Corp.Code § 1101.1 (West Supp. 1985).[5] Plaine and two other shareholders opposed the merger at the hearing, but the hearing officer granted a permit for the merger.

Plaine filed this action in federal court on October 27, 1982. She alleged Natomas and Magma had violated section 14(e) of the Act in omitting and misstating certain material information in the Offer to Purchase sent with the initial tender offer and in the Supplement issued in connection with the amended offer. Specifically, she alleged that certain information regarding projections of future revenues from the Geysers, the financial opinions rendered by Smith Barney and Drexel Burnham, and a possible conflict of interest of Magma's management because of the creation of the new Magma Development Company should have been disclosed to the Magma shareholders.

The district court converted the defendants' motion to dismiss to a motion for summary judgment under Fed.R.Civ.P. 12(c), and ordered judgment for defendants on the grounds that the Commissioner's "fairness" decision collaterally estopped Plaine from proving the injury element of her section 14(e) claim. Plaine timely appealed.

### ISSUES

I. Whether Plaine has standing to assert a violation of section 14(e).

II. Whether an issue decided in a state administrative proceeding may properly be given collateral estoppel effect in a later federal suit.

III. Whether the district court properly granted summary judgment for defendant on the ground that giving collateral estoppel effect to the state Corporations Commissioner's "fairness" decision prevents Plaine from proving a section 14(e) cause of action.

IV. Whether Plaine's claim may properly be dismissed on the alternative grounds raised by defendants in their 12(b)(6) motion to dismiss.

### STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment for the de-

---

**4.** The Agreement also provided for the creation of a new company, Magma Development Company, which would hold all the non-Geyser assets of the old Magma Company. Both tendering and non-tendering shareholders would have the right to purchase their proportionate interest in Magma Development for $3 per share. Thus, shareholders could receive either $45 cash or $42 cash and their proportionate share in Magma Development.

**5.** Section 1101.1 requires that the Commissioner approve the fairness of merger terms in cases where the acquiring corporation owns between 50 per cent and 90 per cent of the target company, but fewer than 100% of the target company's shareholders consent to the merger.

fendants. *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir.1985). We apply the same standard as that employed by the trial court under Rule 56(c) and will affirm a grant of summary judgment only if the record, read in the light most favorable to the non-moving party, establishes that the moving party is entitled to judgment as a matter of law. *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328–29 (9th Cir.1983).

## DISCUSSION

### I. Standing

■ Initially, we address the defendants' argument that Plaine lacks standing to bring a section 14(e) claim. The defendants allege that because Plaine did not voluntarily tender her shares pursuant to the amended tender offer, she must not have relied on the alleged misstatements and was not injured by them. Although she did not tender her shares, Plaine alleges that the false information and omissions in the proxy materials led other shareholders to tender their shares. The success of the tender offer gave Natomas the 83 per cent share in Magma that eventually allowed Natomas to accomplish the merger. While Plaine does not contest the information distributed in connection with the merger vote itself, she alleges she received an inadequate price in the freeze-out merger because of the previous wrongdoings of the defendants.

**6.** Section 14(e), 15 U.S.C. § 78n(e) (1982), provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

■ Section 14(e)[6] is one of the 1968 Williams Act amendments to the Securities and Exchange Act of 1934. "The purpose of the Williams Act is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information...." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975); *see also Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977); *Klaus v. Hi-Shear Corp.*, 528 F.2d 225, 232 (9th Cir.1975). To state a violation of section 14(e), a shareholder need not be a purchaser or seller of any securities as is required under other anti-fraud provisions of the Act.[7] In *Piper*, the Supreme Court, while expressly reserving opinion on the subject of standing in this context, nevertheless pointed out the importance of the difference between section 14(e) and section 10(b):

It may well be that Congress desired to protect, among others, shareholder-offerees who decided not to tender their stock due to fraudulent misrepresentations by persons opposed to a takeover attempt.... These shareholders, who might not enjoy the protection of § 10(b) ..., could perhaps state a claim under § 14(e), even though they did not tender their securities.

*Id.* 430 U.S. at 38–39, 97 S.Ct. at 947–48 (footnote omitted).

**7.** Because section 14(e) does not expressly provide for a private cause of action, there is some disagreement among the circuits as to whether one should be implied. This circuit, without extensive discussion, has allowed suits for private enforcement of section 14(e). *See Pacific Realty Trust v. APC Investments, Inc.*, 685 F.2d 1083 (9th Cir.1982) (allowing target company to bring private suit under section 14(e) for injunctive relief against offeror corporation); *Polinsky v. MCA Inc.*, 680 F.2d 1286, 1291 (9th Cir.1982) (holding that shareholders had standing to allege violation of section 14(e) ); *accord Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 714 (5th Cir.1984); *contra Liberty National Insurance Holding Co. v. Charter Co.*, 734 F.2d 545, 568–71 (11th Cir.1984).

The Fifth Circuit has expressly held that a shareholder may bring a section 14(e) action "if [s]he has been injured by fraudulent activities of others perpetrated in connection with a tender offer, *whether or not [s]he has tendered h[er] shares.*"[8] *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.) (emphasis added), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *accord Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 946 (2d Cir.1969). Although Plaine did not tender her shares, she alleged injury occurring as a result of fraudulent activity in connection with a tender offer. In light of the Act's goal of protecting investors and the specific harm Plaine alleges, we follow the lead of the Fifth and Second Circuits and hold that in these circumstances even a non-tendering shareholder may bring suit for violation of section 14(e).

## II. Collateral Estoppel

The availability of collateral estoppel is a mixed question of law and fact which we review *de novo*. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985). Once we determine that collateral estoppel is available, we review under an abuse of discretion standard the district court's decision to accord collateral estoppel effect to the state's fairness decision under Cal. Corp.Code § 1101.1. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct.

645, 651, 58 L.Ed.2d 552 (1979). Traditionally, collateral estoppel gives preclusive effect in a subsequent court action to a final adjudication made by a court in a prior proceeding.[9] 28 U.S.C. § 1738 (1982)[10] and Supreme Court decisions require federal courts to give state court judgments the same full faith and credit they would have in the state's own courts by applying the preclusion law of the state in which the judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *see also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 & n. 6, 102 S.Ct. 1883, 1889–90 & n. 6, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ Here, the decision for which preclusive effect is sought is not a state court judgment, but an unreviewed state administrative adjudication. The Supreme Court has held that administrative proceedings may be given the preclusive effect accorded to a court "[w]hen an administrative agency is acting *in a judicial capacity* and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." (Emphasis added.) *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

This case does not raise the issue of claim preclusion. The parties do not contend that Plaine could have raised her federal securities law claim before the California Corporations Commissioner. Federal law provides exclusive federal court jurisdiction for Plaine's section 14(e) claim. 15 U.S.C. § 78aa (1982). In any event, because California adheres to the concept of prior jurisdictional competency, California law would not require Plaine to raise her federal claim in the state administrative proceeding. *See Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir.1985) (citing cases).

---

**8.** A non-tendering shareholder may also complain derivatively of injury to the target company. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). Because Plaine did not bring her section 14(e) claim as a derivative action and her suit has not been certified as a class action, however, the question whether she has proved injury to herself, *see* Part III *infra*, is crucial.

**9.** Collateral estoppel or "issue preclusion" should be distinguished from res judicata or "claim preclusion." Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in the prior action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).

**10.** 28 U.S.C. § 1738 (1982) provides in part:
[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

When an administrative proceeding meets the requirements set forth in *Utah Construction*, it may rise to the level of a "judicial proceeding" entitled to preclusive effect by section 1738. *See Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir.1985).[11]

Thus, the threshold inquiry for a court deciding whether to give preclusive effect to a state administrative adjudication, is to determine whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an ade-quate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Utah Construction*, 384 U.S. at 422, 86 S.Ct at 1560. However, there can be no indiscriminate presumption of judicial adequacy of state administrative proceedings.[12] The federal court must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions.[13] To do otherwise would run the risk of precluding relitigation of issues by parties who have had no fair opportunity to be heard.

**11.** In a footnote in *Kremer,* the Supreme Court noted an exception to its rule of issue preclusion in the context of Title VII cases:

> Since it is settled that decisions by the EEOC [Equal Employment Occupational Commission] do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. Relying on this footnote, the Sixth Circuit held that prior, unreviewed state administrative determinations should not be given preclusive effect in subsequent federal civil rights actions. *Elliott v. University of Tennessee,* 766 F.2d 982, 989–93 (6th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 522, 88 L.Ed.2d 455 (1985); *See also Holley v. Seminole County School District,* 763 F.2d 399, 400 (11th Cir.1985) (per curiam) ("[T]he preclusive effect, in a [§ 1983] case, of state administrative proceedings ... is a difficult and arguably open question."); *Garguil v. Tompkins,* 704 F.2d 661, 667 (2d Cir.1983) (no claim preclusive effect in § 1983 cases for procedurally inadequate unreviewed state administrative decision), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Moore v. Bonner,* 695 F.2d 799, 801–02 (4th Cir.1982) (no preclusive effect in a § 1983 case to unreviewed state administrative decision). We decline similarly to broaden *Kremer* to prevent application of issue preclusion in the context of any later federal securities suit.

We read footnote 7 in *Kremer* as applying to the unique statutory scheme of Title VII cases with its dual system of state and federal proceedings. *See Kremer,* 456 U.S. at 468–69, 102 S.Ct. at 1890–91. We see no indication that the Supreme Court intended its holding to be carried outside of that limited context.

In extending the *Kremer* rule beyond Title VII suits to civil rights cases, the Sixth Circuit relied heavily on the unique historical and procedural antecedents of section 1983. *See e.g.,* 766 F.2d at 994. (Court's holding is "attempt ... to remain faithful to both the teachings of the Supreme Court and the intent of Congress as manifested in section 1983 and its history."). Even assuming that there is some basis for extending the exception of footnote 7 to section 1983 actions, there are no remotely comparable historical and procedural antecedents for federal securities law violations.

**12.** That the California Corporation Commissioner's decision here was not reviewed by a state court does not diminish its preclusive effect in federal court. Plaine could have sought state court review of the Commissioner's decision, Cal.Code Civ.Proc. § 1094.5 (West Supp.1985), but chose not to do so. If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal.

**13.** The Supreme Court has directed that, under 28 U.S.C. § 1738, federal courts must refer to the preclusion law of the state in which the judgment was rendered. *Marrese,* 105 S.Ct. at 1332. Thus, a federal court should normally give preclusive effect to a state administrative decision when a state court would itself give that administrative decision preclusive effect, absent some special circumstance, *see* n. 12 *supra.* However, there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down in *Utah Construction.* California has apparently adopted the *Utah Construction* standard as the basis for determining the adequacy of California agency decisions for preclusion purposes, *see infra,* and thus no additional scrutiny beyond applying state law need be considered here.

Thus, we turn to California law to determine the preclusive effect that California courts would give to a decision of the California Corporations Commissioner. While the California Supreme Court has not addressed the precise issue of the effect to be given to decisions of the Corporations Commissioner, it has addressed the preclusive effect of other administrative agency determinations. In *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982), the California Supreme Court gave collateral estoppel effect to a "fair hearing" decision of the California Department of Social Services. Although the court limited its holding to the facts of the particular case, 32 Cal.3d at 489, 186 Cal.Rptr. at 90, 651 P.2d at 334, it set out general principles which we use for guidance in this case.

*Sims* established a two part test for determining whether administrative decisions will be given collateral estoppel effect. First, it adopted the standard the United States Supreme Court had established in *Utah Construction*. 32 Cal.3d at 479, 186 Cal.Rptr. at 83, 651 P.2d at 327–28.

Second, the Court looked to whether the traditional criteria for applying collateral estoppel were satisfied on the facts of the case. 32 Cal.3d at 484, 186 Cal.Rptr. at 87, 651 P.2d at 331. California courts will allow collateral estoppel to bar relitigation of an issue decided at a previous proceeding if:

> (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].

*Id.* (quoting *People v. Taylor*, 12 Cal.3d 686, 691, 117 Cal.Rptr. 70, 527 P.2d 622, 625 (1974)). *See also St. Paul Fire and Marine Insurance Co. v. Weiner*, 606 F.2d 864, 868 (9th Cir.1979) (applying same California standard in applying law of forum state).

 The district court did not abuse its discretion in giving collateral estoppel ef-

fect here to the California Corporations Commissioner's fairness decision because under California preclusion law, both the standard for giving collateral estoppel effect to administrative judgments and the traditional criteria for applying collateral estoppel are present.

The Commissioner's fairness hearing meets the *Utah Construction* criteria for giving effect to the judgment of an administrative agency. The fairness hearing was conducted similarly to a court proceeding. It was an adversary proceeding in which opposing parties were present and represented by counsel and were allowed to call, examine, cross-examine, and subpoena witnesses. Under the applicable sections of the California Administrative Code, testimony was to be submitted under oath or affirmation and a verbatim transcript was required. The parties received a written decision setting forth the Commissioner's reasons for allowing the merger. *See Sims*, 32 Cal.3d at 479–81, 186 Cal.Rptr. at 83–85, 651 P.2d at 528–30.

The Commissioner's decision was also adjudicatory in nature, requiring the application of a rule ("fairness") to a specific set of facts. *See Sims*, 32 Cal.3d at 480, 186 Cal.Rptr. at 84, 651 P.2d at 328. The Commissioner had sole jurisdiction to decide the fairness issue under Cal.Corp.Code § 1101.-1. In fact, the validity of the merger was dependent upon the decision.

Further, the fairness hearing provided both parties with an adequate opportunity to litigate their fairness claims. Although some of the full benefits of court proceedings were not provided by the administrative procedure, these additional procedures are not required to give collateral estoppel effect to an administrative decision. *See Sims*, 32 Cal.3d at 480–81, 186 Cal.Rptr. at 84–85, 651 P.2d at 329 (difference in rules of evidence not material).

The Commissioner's decision also meets the traditional requirements for applying collateral estoppel. Plaine was a party to and active in the administrative proceeding. The Commissioner's determination of fairness was final. Although Plaine could

have sought state court review of the Commissioner's decision, Cal.Civ.Proc.Code § 1094.5 (West Supp.1985), she chose not to, and the decision became binding. Moreover, the issue of fairness is one of the issues which will be considered in the federal proceeding.[14]

Thus, we conclude that the district court did not abuse its discretion in giving collateral estoppel effect to the Commissioner's decision on the fairness of the merger.

### III. "Fairness" and Injury Under § 14(e)

 Plaine contends that even if collateral estoppel effect is given to the Commissioner's fairness determination, the mere fact that the merger price was determined to be fair is not fatal to her suit claiming that misstatements in the amended tender offer violated section 14(e). Defendants argue that even assuming that there was a violation of the proxy rules, the fact that the merger price was fair prevents Plaine from proving that she was injured by any misstatement or omission. Thus we must consider whether precluding Plaine from contesting the fairness of the terms of the merger in this securities litigation also precludes her from proving a cause of action under section 14(e).

In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court considered the issue of fairness in a suit under section 14(a), 15 U.S.C. § 78n(a) (1982)—a section that is similar in purpose to section 14(e). *See Klaus v. Hi-Shear Corp.*, 528 F.2d 225, 232 (9th Cir.1975). In *Mills*, the Court held that a finding that the merger was fair could not be used to foreclose the plaintiff's attempt to show liability because "[t]here is no justification for presuming that the shareholders of every corporation are willing to accept any and every fair merger put before them ...." 396 U.S. at

382 n. 5, 90 S.Ct. at 620 n. 5. Rather, the plaintiff succeeds in proving causation once the misstatement or omission has been shown to be "material." [15] *Id.* at 385, 90 S.Ct. at 622. Fairness may be considered, however, in determining the form of relief to which the shareholders may be entitled. *Id.* at 386, 90 S.Ct. at 622. Similarly, in *Gerstle v. Gamble-Skogmo, Inc.*, 298 F.Supp. 66, 99–100 (E.D.N.Y.1969) *modified on other grounds and aff'd*, 478 F.2d 1281 (2d Cir.1973), the court specifically considered the relationship between fairness and proof of injury in a section 14(a) claim. There the court reasoned, "When a seller is induced to sell his property by means of a statement which he subsequently learns is false, the fact that the sales price was fair at the time is irrelevant." 298 F.Supp. at 100.

These opinions recognize, as Plaine contends, that shareholders can be injured in ways other than by receiving an "unfair" price for their shares. While the issue of fairness is relevant to the issue of damages, it does not necessarily defeat a plaintiff's claim of injury.

The defendants rely on *Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63 (8th Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981), which is factually similar to the instant case but holds that the plaintiffs had not proved injury. There the plaintiffs had alleged violations of sections 14(a) and 14(e) in connection with a tender offer and merger. Plaintiffs alleged that they suffered harm despite their own inaction because the defendants had unlawfully induced other minority shareholders to exchange their shares. *Id.* at 69 n. 12. The court concluded, however, that "[the plaintiffs] were harmed, if at all, only when the takeover was consummated—*i.e.*, when they were frozen out in 1978. They do not, however,

---

**14.** The extent to which "fairness" is identical to "value" of the stock for the purpose of determining injury and damages in the federal suit is the subject of Part III *infra*.

**15.** Courts have applied the same causation standard under § 14(e). *Chris-Craft Industries, Inc.*

*v. Piper Aircraft Corp.*, 480 F.2d 341, 362 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973) (analogizing it to the "materiality" standard under § 10(b) ); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1219–20 (9th Cir. 1980) (same).

challenge the terms of the freeze-out merger or allege that they were harmed by it." *Id.* at 70. In holding that the Shapiros had not proved harm, the Eighth Circuit relied upon the fact that they received more in the freeze-out merger (i.e., subordinated debentures worth $40 per share) than they allege should have been offered them earlier ($15 per share). *Id.* at 67, 70. Here, in contrast, Plaine alleges that the $45 per share which was applicable to both the freeze-out merger and the earlier tender offer was an inadequate price.

Plaine's position is further strengthened by her argument that the issue of fairness in the state proceeding is not identical to the question of value to be determined in federal court. The two cases she relies upon, *Graham v. Exxon Corp.*, 480 F.Supp. 12 (S.D.N.Y.1978), and *Dofflemyer v. W.F. Hall Printing Co.*, 558 F.Supp. 372 (D.Del.1983), while dealing with the more limited Delaware state appraisal procedure, are instructive. In both cases, the Delaware Court of Chancery had determined the "objective" value of the plaintiff's shares, yet the federal district courts both held that the more restrictive method of valuation used in the state court prevented application of collateral estoppel in the federal proceeding. *Graham*, 480 F.Supp. at 14; *Dofflemyer*, 558 F.Supp. at 381. Here too, the California Corporations Commissioner merely decided that the merger price was within a range of "fairness." The determination of actual damages in the federal claim may well produce a different price.

Because collateral estoppel effect was properly given to the Corporations Commissioner's decision, it should be considered determinative of the issue of "fairness" to the extent that issue is involved in the federal proceeding. The damages awarded a successful section 14(e) plaintiff, however, may go beyond a determination of a "fair price." The purpose of the 1934 Act is to compensate plaintiffs injured by violations of the federal securities laws whether the measure of damages is out-of-pocket loss, benefit of the bargain, or some other appropriate standard. *Osofsky v. Zipf,* 645 F.2d 107, 111 (2d Cir.1981). "'[A]ctual damages' may include loss of possible profit, unless wholly speculative, from securing a merger agreement more favorable to plaintiff." *Dofflemyer,* 558 F.Supp. at 380.

The differences between the state administrative proceedings and federal court proceedings leave some questions of material fact regarding section 14(e) damages to be determined in the federal proceeding. For example, even though $45 per share is considered a "fair" price, plaintiff might be able to show that, had section 14(e) been fully complied with, the shareholders' negotiating position would have produced a higher amount. The existence of these disputed material facts require the reversal of the district court's summary judgment decisions.[16]

## IV. Alternative Grounds for Dismissal

■ Finally, defendants raise several alternative grounds for dismissing the case originally raised in their moving papers. The general rule is that an appellate court may affirm the district court's grant of summary judgment on any basis supported by the record. *Salmeron v. United States,* 724 F.2d 1357, 1364 (9th Cir.1983). If the opinion below was correct, it must be affirmed, even if the district court relied on wrong grounds or wrong reasoning. *Keniston v. Roberts,* 717 F.2d 1295, 1300 & n. 3 (9th Cir.1983).

We review *de novo* a motion to dismiss under 12(b)(6). *Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir.1984).

---

**16.** The concurring opinion would deny any preclusive effect to the California Corporations Commissioner's determination of price fairness because we hold that there may be liability under section 14(e) although the tendered price is objectively fair. Because the Corporations Commissioner's determination does not resolve *all* the questions presented in Plaine's securities action, Plaine's federal *claim* is *not* precluded and she may proceed with her federal suit. However, because the Corporations Commissioner has already determined the *issue* of objective price fairness, Plaine *is precluded* from relitigating *that single issue* in her subsequent federal suit.

All the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir.1983). To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982).

■ Defendants argue that Plaine's claim does no more than state a claim for breach of fiduciary duty that is not actionable in federal court. We disagree. Plaine's allegations are sufficient to survive a motion to dismiss. Rather than alleging mere mismanagement and breach of fiduciary duty, as in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), Plaine set forth specific items of information which she alleges were improperly omitted from or misrepresented in the tender offer documents. In particular, she alleged the documents failed to contain certain of Natomas' financial projections and professional opinions rendered to Magma in connection with both tender offers.

Assuming that Plaine does more than allege mere breach of fiduciary duty, the defendants further argue that including the information that Plaine alleges should have been included in the offer documents is not required by the proxy rules and its omission does not constitute an actionable violation of section 14(e). This raises a difficult issue in a developing area of the law. *See Texas Partners v. Conrock*, 685 F.2d 1116, 1121 (9th Cir.1982), *cert. denied*, 460 U.S. 1029, 103 S.Ct. 1281, 75 L.Ed.2d 501 (1983); *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265, 1274–78 (9th Cir.1982) (Fletcher, J., dissenting); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir.1980); *see also Starkman v. Marathon Oil Co.*, 772 F.2d 231, 241–42 (6th Cir.1985), *cert. denied*, ── U.S. ──, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Flynn v. Bass Brothers Enterprises, Inc.*, 744 F.2d 978, 988 (3d Cir.1984).

This question was not fully briefed to the district court, and was not addressed in the district court's order. We decline to resolve this issue now except to conclude that, given the present incomplete record, the nature and reliability of the undisclosed information is sufficiently in dispute to defeat the defendants' motion for summary judgment.

REVERSED in part and REMANDED for further proceedings consistent with this opinion.

FLETCHER, Circuit Judge, concurring in the result:

I concur in part I of the majority opinion holding that Plaine has standing to assert a section 14(e) claim, and in part IV of the opinion rejecting the defendants' alternative grounds for dismissal. I disagree, however, with the majority's collateral estoppel analysis, and concur separately to state my reasons.

Collateral estoppel may bar relitigation of an issue decided in a previous proceeding. " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). "Similarity between issues does not suffice; collateral estoppel is applied only when the issues are *identical*." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir.1985) (en banc) (emphasis added). The key question facing us is whether the issue adjudicated before the California Corporations Commissioner, the fairness of the merger price, is *identical* to the issue in the case at bar, whether Natomas and Magma violated section 14(e) by omitting and misstating certain material information in the Offer to Purchase.

In Part III of its opinion, the majority addresses this question and correctly concludes that "shareholders can be injured in

ways other than by receiving an 'unfair' price for their shares." Even though the California Corporations Commissioner determined that the merger price was fair, Plaine should be afforded an opportunity to show that had the defendants complied with section 14(e), she would have obtained a higher price for her shares. The majority recognizes that the damages to which a successful section 14(e) plaintiff is entitled are not restricted to a determination of a fair price.

I thus conclude that the issue of whether a merger price is fair within the meaning of the California Corporations Code is not *identical* to the issue of whether the plaintiff has suffered compensable injury under section 14(e). Because identity of issues is the first prerequisite for application of collateral estoppel, I believe we need proceed no further. I would hold that the district court erred in deciding that the California Corporations Commissioner's determination of fairness collaterally estopped Plaine from proceeding with her federal securities law action, and would remand to allow Plaine to proceed with her case.

I therefore concur in the result.