Samuel DEUTSCH, Plaintiff–Appellant,

v.

Robert G. FLANNERY, Robert C. Marquis; Richard W. Stumbo, Jr., Walter G. Treanor; John G. Bannister; Wayne T. Donnels, John G. McDonald; Justin M. Roach, Jr.; Joseph Rosenblatt; The Western Pacific Railroad Company; Union Pacific Corp., Defendants–Appellees.

No. 88–2629.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1989.

Decided Aug. 21, 1989.

Richard M. Meyer, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiff-appellant.

John F. Collins, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Kurt W. Melchior, Nossaman, Guthner, Knox & Elliott, San Francisco, Cal., T. Barry Kingham, Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendants-appellees.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

In 1980 Union Pacific Corporation ("Union Pacific") and Western Pacific Railroad Company ("WesPac") entered into an Agreement of Merger which provided that Union Pacific, which already owned 10% of WesPac stock, would make a tender offer for the remaining 90% of WesPac stock at $20 per share. The Agreement of Merger further provided that the tender offer would be followed by a back-end cash out merger of non-tendering shareholders, also at $20 per share. In response to the tender offer, 77% of the WesPac stock was tendered, leaving 13% in the hands of nontendering shareholders. Union Pacific and WesPac then applied to the Interstate Commerce Commission ("ICC") for approval of the merger transaction pursuant to the Interstate Commerce Act, which prohibits the acquisition of one rail carrier by another without ICC approval. 49 U.S.C. § 11343(a)(3) (1982). The ICC approved the transaction in 1982, finding, *inter alia,* that "the terms of the UPRR–WPRR transaction are just and reasonable" and that the $20 per share price for WesPac shares was "fair and reasonable." *Union Pacific Corp., Pacific Rail System, Inc. and Union Pacific R.R.—Control—Missouri Pacific Corp. and Missouri Pacific R.R.,* 366 I.C.C. 459, 638 (1982). In *Southern Pacific Transp. Co. v. I.C.C.,* 736 F.2d 708 (D.C. Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 322 (1985), the ICC order approving the transaction was reviewed and upheld.

Appellant Samuel Deutsch is a former shareholder of WesPac who tendered his shares in response to Union Pacific's tender offer. In 1984 he brought this action in the Northern District of California claiming that Union Pacific, WesPac and WesPac's former directors violated sections 10(b) and 14(e) of the Securities Exchange Act of 1934 and Rule 10b–5 by designing and executing a scheme to allow Union Pacific to acquire WesPac at a dishonestly low price.[1] Specifically, appellant alleges

---

1. In 1983 appellant commenced a similar action in the Southern District of New York, alleging fraud in connection with the tender offer. This action was dismissed without prejudice for failure to plead fraud with particularity. *Deutsch v. Flannery,* 597 F.Supp. 917 (S.D.N.Y.1984).

(1) that the tender offer did not disclose the true market value of certain WesPac real estate holdings not used for railroad operations, and (2) that WesPac's decision to forgo dividends for the last three quarters of 1979 was intended to depress the value of WesPac stock.

■ The district court dismissed the action for lack of subject matter jurisdiction,[2] holding that § 11341(a) of the Interstate Commerce Act exempted the transaction from attack under all other laws, including the federal securities laws, once it had been approved by the ICC.[3] We have jurisdiction under 28 U.S.C. § 1291 (1982), and we affirm.

We agree with the district court that this case is controlled by *Schwabacher v. United States*, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948). The plaintiffs in *Schwabacher* were a group of former shareholders of the Pere Marquette Railway Company who were dissatisfied with an ICC-approved railroad merger plan between Pere Marquette and the Chesapeake & Ohio Railway Company. Relying upon a provision in the Pere Marquette charter, plaintiffs claimed that under Michigan law they were entitled to more per share than the amount the ICC had determined to be just and reasonable. The Supreme Court held that the Michigan law claims could not be maintained if their resolution might lead to

a share price that exceeded that which the ICC had found to be just and reasonable. We see no principled basis for distinguishing *Schwabacher* from this case.[4] Both this case and *Schwabacher* involve attempts by former shareholders to obtain higher prices for their shares than the prices approved as fair and reasonable by the ICC.

Appellant's attempt to distinguish *Schwabacher* is to no avail. Appellant argues that *Schwabacher* was a Supremacy Clause case—that the plaintiffs' claims in *Schwabacher* were rejected only because they were based upon state law, which was trumped by the federal Interstate Commerce Act. We find this reading of *Schwabacher* untenable. Nowhere does the *Schwabacher* Court suggest that its analysis would have been different had the plaintiffs' claims been based upon federal law. Moreover, the statutory provision upon which the *Schwabacher* Court relied drew no distinction between state and federal law for the purposes of exemption. To the contrary, the statute explicitly provided that parties to an ICC-approved transaction were relieved of "restraints, limitations and prohibitions of law, *Federal, State, or municipal....*" Interstate Commerce Act, ch. 722, Title I, § 7, 54 Stat. 905 (1940) (current version at 49 U.S.C. § 11341(a)).

---

**2.** The district court had previously dismissed the action on the ground of issue preclusion. Our court reversed in part and remanded. *Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir.1987).

**3.** 49 U.S.C. § 11341(a) (1982) provides in relevant part:

The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired through the transaction without the approval of a State authority. A carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and all other law, including state and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction....

**4.** It is true that the Court in *Schwabacher* was interpreting § 11341(a)'s predecessor rather than § 11341(a) itself. The two sections are nearly identical, however. Section 11341(a)'s predecessor provided that participants in an ICC approved transaction were immune from "all other restraints, limitations, and prohibitions of law, Federal, State or municipal, insofar as may be necessary to carry into effect the transaction ... and to hold, maintain and operate any properties and exercise any control or franchises acquired through such transaction." Interstate Commerce Act, ch. 722, Title I, § 7, 54 Stat. 905 (1940) (current version at 49 U.S.C. § 11341(a)). Because the language of § 11341(a), *see supra* n. 3, is not materially different from that of its predecessor, the *Schwabacher* Court's recognition of the broad preemptive sweep of ICC approval directly undercuts appellant's contention that § 11341(a) does not bar his claims based upon the federal securities laws.

Appellant's reliance upon *City of Palestine, Texas v. United States*, 559 F.2d 408 (5th Cir.1977), *cert. denied*, 435 U.S. 950, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978), is misplaced. In *City of Palestine*, the plaintiff municipality sued to enforce a contract it had made with MoPac, a railroad carrier, in 1954. MoPac claimed that it no longer had any obligations to the City because the ICC had abrogated the contract while approving a merger between MoPac and two of its subsidiaries in 1976. The Fifth Circuit rejected this argument, holding that Congress did not intend to give the ICC the power to relieve MoPac of preexisting contractual obligations that were unrelated to the merger transaction under ICC review. This holding clearly has no application to the instant case. Appellant here does not seek to enforce any preexisting contracts with Union Pacific or WesPac that are unrelated to the Union Pacific–WesPac merger. Rather, he is directly challenging the terms of the merger transaction itself—a transaction which the ICC undeniably had the power to review and approve. *See* 49 U.S.C. § 11343(a)(3).

Appellant also relies upon *Plaine v. McCabe*, 797 F.2d 713 (9th Cir.1986), a case which is clearly inapposite. In *Plaine*, we held that a California Corporations Commissioner's finding that a merger price was fair did not foreclose a shareholder from bringing suit claiming that misstatements in the tender offer violated federal securities laws. Since the merger transaction in *Plaine* was not subject to ICC review and approval, we had no occasion to consider or discuss the preemptive scope of ICC approval under 49 U.S.C. § 11341(a).

Appellant also argues that § 11341(a) does not apply to this case because the ICC had no jurisdiction to review the fairness of Union Pacific's tender offer as it was not part of the merger transaction. We disagree. The tender offer was the first step in the transaction by which Union Pacific acquired control of WesPac; it was an integral part of the Agreement of Merger, not a discrete, unrelated transaction. Thus while it may be true, as appellant asserts, that the ICC does not have

authority to review *all* tender offers made by rail carriers, the ICC clearly had the authority to review Union Pacific's tender offer because it was part of a transaction by which one carrier acquired control of another. 49 U.S.C. § 11343(a)(3).

Finally, the fact that the Union Pacific–WesPac merger was effected through the device of a voting trust does not deprive the ICC of jurisdiction over the transaction. The voting trust mechanism allows carriers effectively to complete a merger transaction while they are awaiting ICC approval, but it does not obviate the need for ICC approval. *See Water Transport Ass'n v. I.C.C.*, 715 F.2d 581, 582 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 998, 79 L.Ed.2d 231 (1984).

For the foregoing reasons, the district court's dismissal of appellant's action for lack of subject matter jurisdiction is

AFFIRMED.