**WESTERN DISTRICT COUNCIL OF LUMBER PRODUCTION AND INDUSTRIAL WORKERS, Plaintiff–Appellant,**

v.

**LOUISIANA PACIFIC CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 88–3884.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 1, 1989.

Decided Dec. 28, 1989.

Robert D. Kaplan, Friedman & Kaplan, New York City, for plaintiff-appellant.

Clifford N. Carlsen, Jr., Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant-appellee.

Before TANG, BOOCHEVER and KOZINSKI, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

Western District Council of Lumber Production and Industrial Workers (Western) appeals from the magistrate's dismissal of Western's action for injunctive relief. Western sought to bar Louisiana Pacific (L–P) from voting proxies in the election of directors at its annual meeting. Western alleges that L–P's acquisition of Rounds & Porter Lumber Company (Rounds & Porter) was a "related party transaction," and L–P's failure to disclose it rendered the proxy solicitation materially misleading in violation of Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (1988), and Rule 14a–9. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

Western is the record and beneficial owner of ten shares of L–P. L–P is a public company subject to all the reporting and disclosure requirements of the Securities Exchange Act, including the rules governing proxy solicitations. Harry Merlo (Merlo) was President of L–P, and became Chairman of its Board of Directors. Ralph C. Rounds (Rounds) became a member of L–P's Board in 1973 or 1974.

Until 1966, Rounds had been a co-owner of Rounds & Porter. Rounds' brother, Dwight, was President of Rounds & Porter until his death in 1971 or 1972. Dwight's widow, Betty Rounds, became President after her husband's death and remained in that position until L–P bought Rounds & Porter's assets in a bankruptcy sale in 1987. Betty Rounds has not remarried.

In early 1987, Betty Rounds contacted Merlo about a possible sale of Rounds & Porter. Merlo told her that he did not think he was interested. In May of 1987, Rounds & Porter filed a voluntary petition in bankruptcy under Chapter 11. During the summer, Merlo became interested in Rounds & Porter and investigated many of its lumber sites. All negotiations were conducted by Merlo, with no participation by

Rounds. Merlo presented the deal to L–P's Board, and personally notified the Board of Rounds' family connection with the company.

On August 2, 1987, L–P's Board voted to buy Rounds & Porter for just under $6.5 million, and a letter of intent was sent three days later. Rounds abstained. Rounds resigned from L–P's Board three or four days after the August 2 meeting. The formal agreement was not signed until September 23, 1987, more than six weeks after Rounds had left the Board.

In 1988, L–P's Board sent a proxy solicitation to its shareholders in preparation for the annual meeting of shareholders to be held May 6, 1988. The shareholders were scheduled to elect three directors. The Rounds & Porter acquisition was not disclosed as a "related party transaction" in the proxy statement. Western, however, never tendered a proxy card to L–P; rather, it eventually voted in the May 6 election with full knowledge of the Rounds & Porter transaction.

## PROCEEDINGS BELOW

Western filed an action on April 14, 1988, seeking a declaration that L–P's proxy solicitation was materially misleading, and a preliminary injunction enjoining L–P from voting any proxy until a corrected solicitation was distributed. Western claimed that L–P's failure to disclose the acquisition of Rounds & Porter violated section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a–9.

The parties consented to a hearing before a magistrate. Western filed a motion to consolidate its application for a preliminary injunction with a trial of the action on the merits. The magistrate granted the motion pursuant to Fed.R.Civ.P. 65(a)(2), finding that the parties were prepared to

make a complete record and the issues were identical.

The magistrate found that Western had standing to enjoin future corporate practices. The magistrate further held that the nondisclosure of the Rounds & Porter acquisition did not violate the securities acts because: 1) Betty Rounds was not Rounds' "sister-in-law" within the meaning of the securities regulations, and consequently the acquisition was not a "related party transaction"; and 2) the transaction was not material to an investor voting for the reelection of directors. Western filed a timely notice of appeal.

## DISCUSSION

### I. STANDING

■ Whether Western has standing is a question of law we review de novo. *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir.1985). L–P argues that Western lacks standing to bring this suit because Western did not rely on the proxy statement, and later voted at the meeting with full knowledge of the Rounds & Porter acquisition. L–P relies on *Gaines v. Haughton*, 645 F.2d 761 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). In *Gaines*, a shareholder brought a federal class action suit seeking to invalidate past elections and to remove certain directors, based on the board's failure to disclose improper payments to foreign officials in proxy statements. Gaines had voted his shares and did not rely on the deceptive proxy solicitation. We held that "shareholders who do not rely on allegedly misleading or deceptive proxy solicitations lack standing to assert direct (as opposed to derivative) equitable actions under § 14(a)." *Gaines*, 645 F.2d at 774.[1]

In *Gaines* the plaintiff instituted suit after the election of the board members. *Id.* at 766. In this case, Western sought to

---

1. Western argues that we should reconsider *Gaines* in light of the contrary position taken by other circuits. *See Palumbo v. Deposit Bank*, 758 F.2d 113, 116 (3d Cir.1985); *Cowin v. Bresler*, 741 F.2d 410, 427 (D.C.Cir.1984); *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 794 (8th Cir.1967); *Dann v. Studebaker–Packard*, 288 F.2d 201, 209 (6th Cir.1961); *see also Plaine v.*

*McCabe*, 797 F.2d 713, 717 (9th Cir.1986) (shareholder who failed to voluntarily tender shares still had standing to sue under § 14(e) because plaintiff alleged that other shareholders were misled into tendering shares). We are bound by our decision in *Gaines*, and decline to reconsider it.

enjoin the meeting before it occurred. We agree with the magistrate that *Gaines* does not bar a direct suit filed prior to the election.

Our conclusion that *Gaines* does not bar Western's suit is consistent with general standing doctrine.

Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies." As the Court explained in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–476 [102 S.Ct. 752, 757–761, 70 L.Ed.2d 700] (1982), the "case or controversy" requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. The several doctrines that have grown up to elaborate that requirement are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498 [95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343] (1975).

> "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Vander Jagt v. O'Neill,* 226 U.S.App.D.C. 14, 26–27, 699 F.2d 1166, 1178–1179 (1983) (Bork, J., concurring).

The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Standing analysis takes into account "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A plaintiff must allege three elements to satisfy the constitutional component of standing: 1) injury in fact; 2) a traceable causal connection between the defendant's conduct and the injury; and 3) that the injury is likely to be redressed or prevented by the relief sought. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324–3325. Western satisfies all three requirements. First, Western alleges injury by the other shareholders' election of directors based on an allegedly misleading proxy solicitation. *See Cowin v. Bresler,* 741 F.2d 410, 427 (D.C.Cir.1984). Second, Western's alleged injury is fairly traceable to L–P's conduct. Western alleges that the other shareholders voted for the directors because of the allegedly misleading proxy solicitation. *See Plaine v. McCabe,* 797 F.2d 713, 718 (9th Cir.1986) (holding that a shareholder who failed to tender shares still had standing to sue directly under section 14(e) because the plaintiff alleged that other shareholders were misled into tendering shares that resulted in a merger). Last, the district court could have prevented the injury by granting a preliminary injunction enjoining L–P from voting any proxy until a corrected solicitation was distributed. Western satisfies the constitutional requirements of standing.

In addition to the constitutional requirements,

> [s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. None of these prudential considerations dictate against Western's standing to enjoin future corporate practices.

If *Gaines* bars Western's suit, then a shareholder who learns of a material omission in a proxy statement before an election could never sue directly, because a shareholder aware of the omission will not rely on the proxy statement when voting.

Further, no shareholder could sue before the election, because those shareholders satisfying *Gaines'* requirement that they have relied on the statements would be precisely those who were ignorant of the information necessary to sue until after they voted. Direct action would be available only after the election and only to those shareholders who voted in reliance on the proxy statements. We decline so to limit shareholders' options. *See Bradshaw v. Jenkins,* Fed.Sec.L.Rep. 91,645 (W.D. Wash.1984).

We therefore hold that a shareholder has standing to sue directly to challenge the sufficiency of a proxy statement and to enjoin corporate action before it occurs.

## II. MOOTNESS

L–P argues that the case is now moot because Western sought only a preliminary injunction enjoining L–P from voting any proxies. L–P points out that the meeting already has occurred, and claims the relief sought by Western can no longer be granted. This argument is without merit.

The case has not lost its character as a present live controversy. The parties still dispute whether the proxy solicitation sent by L–P was materially misleading because of L–P's failure to disclose the acquisition of Rounds & Porter. It is true that we have stated that: "[w]here the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot." *Friends of the Earth, Inc. v. Bergland,* 576 F.2d 1377, 1379 (9th Cir. 1978); *see Sawyer v. Pioneer Mill Co.,* 300 F.2d 200, 202 (9th Cir.) (en banc), *cert. denied,* 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962) (shareholder's action seeking preliminary injunction prohibiting management from voting proxies at meeting to approve merger was moot because the meeting had occurred and the other party to the merger would be a necessary party to any suit challenging the merger).

In this case, however, we have the power to undo the election if the proxy solicitation violated Section 14(a) of the Securities Ex-

change Act and such relief is in the best interests of the shareholders. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964) ("It is for the federal courts 'to adjust their remedies so as to grant the necessary relief' where federally secured rights are invaded.") (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)); *see also Mills v. Elec. Auto–Lite Co.,* 396 U.S. 375, 386–388, 90 S.Ct. 616, 622–624, 24 L.Ed.2d 593 (1970).

L–P argues that Western could not be given this relief since it never requested such a remedy in its pleadings. We disagree. First, Western could hardly be expected to request the rescission of an election that had not occurred when its complaint was filed. Second, this argument ignores Fed.R.Civ.P. 54(c), which states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings."* (emphasis added). Consequently, this appeal is not moot simply because Western failed to ask for this type of relief.

Last, this case is not moot because Western still has a personal stake in the outcome of the litigation. In *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980), the Supreme Court stated that:

[t]he "personal stake" aspect of mootness doctrine [similar to the personal stake requirement of standing] also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving. One commentator has defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973).

Western's injury from the putative misleading solicitation continues; other shareholders allegedly elected the present Board

on the basis of undisclosed material information. L–P's case is not moot.

## III. THE PROXY SOLICITATION

■ The district court's interpretation of the Securities Exchange Act's "related party" disclosure requirements is statutory construction, reviewed de novo. *See Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1447 (9th Cir.1989). Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (1988), prohibits the dissemination of proxies in contravention of such rules and regulations as the SEC might prescribe. Rule 14a–3 makes it unlawful to solicit proxies from shareholders without disclosing any transaction worth over $60,-000 involving a director or his immediate family.[2] A director's immediate family includes "such person's spouse; parents; children; siblings; mothers and father-in-law; sons and daughters-in-law; and *brothers and sisters-in-law*." (emphasis added.) *See* Instructions to Item 404(a), codified at 17 C.F.R. § 229.404(a) (1988).

Western argues that the Rounds & Porter acquisition was a related party transaction because Betty Rounds was still Ralph Rounds' sister-in-law despite the death of her husband. Western claims that it is entitled to rescind the election because: 1) it established a violation of Rule 14a–3, and this rule confers a private cause of action for shareholders to sue absent a showing of the materiality of the omission; or 2) the violation of this rule establishes the materiality of the omission as a matter of law under Rule 14a–9. We need not address these contentions because we find that the Rounds & Porter transaction was not a related party transaction.[3]

The SEC has not provided any definition of the term "sister-in-law." The magistrate interpreted the term "sister-in-law" strictly, requiring disclosure "where the marriage between the collateral relative and his spouse is still in place." Therefore, because Dwight Rounds died fifteen years before the sale, Betty Rounds was not Ralph Rounds' sister-in-law and the transaction was not a "related party transaction."

L–P argues that the magistrate was correct to define this term strictly, and also argues that Betty Rounds should not be considered Ralph Rounds' sister-in-law because the evidence established that he had not seen her in a number of years and was not close to her. Conversely, Western argues that the definition should be expansive to promote the purposes of the securities acts, and that the term "sister-in-law" should include all ex-wives unless they remarry.

We have found no cases defining "sister-in-law" in relation to the securities acts. Although we agree that one policy behind the securities acts is to promote full disclosure, the Supreme Court has also warned that "a minimal standard might bring an overabundance of information within [the court's] reach, and lead management 'simply to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decision-making.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448–449, 96 S.Ct. 2126, 2131–2132, 48 L.Ed.2d 757 (1976)) (discussing why to fulfill the materiality requirement there must be a substantial likelihood that the omitted information would have been considered important by the reasonable investor).

---

**2.** Rule 14a–3 requires the disclosure of "related party" transactions by a rather circuitous route. Rule 14a–3 makes it unlawful to solicit proxies from shareholders without furnishing a proxy statement containing the information required by Schedule 14A. *See* 17 C.F.R. § 240.14a–3 (1988). Item 7 of Schedule 14A states that the information required by Item 404(a) of Regulation S–K must be provided if the proxy solicitation involves the election of directors. *See* 17 C.F.R. § 240.14a–101 (1988). Item 404(a) of

Regulation S–K provides that any transaction worth over $60,000 involving a director or his immediate family must be disclosed. *See* 17 C.F.R. § 229.404(a) (1988).

**3.** We also note that before the magistrate, Western conceded that Rule 14a–3 does not create a private cause of action and rested its entire case on Rule 14a–9, which requires a showing of the materiality of the omission.

A sister-in-law is defined as the "wife of one's brother"; a wife, however, is defined as "[a] woman united to a man by marriage; a woman who has a husband *living* and undivorced." *Black's Law Dictionary*, 1243, 1433 (5th ed. 1979) (emphasis added). Western concedes that divorce would be sufficient to sever the status relationship, but argues that the death of the lineal relative should not break the connection. We see no such difference between a divorce and the death of a director's lineal relative. A sister-in-law relationship is one of status which is dependent upon the continued existence of the qualifications. Western argues that the death of the sibling will not always break the emotional or economic ties between a director and the spouse of the director's deceased sibling. We agree that the closeness between the director and the former spouse of a sibling could be relevant as to the materiality of any omitted transaction between the company and the relative. We only hold that Rule 14a–3 does not automatically require disclosure of transactions with the ex-wife of a director's dead sibling.

■ Western further argues that the magistrate erred by looking to the "intrinsic fairness" of the acquisition before deciding whether it was material information. Before the magistrate, Western argued that the omission of the Rounds & Porter transaction violated both Rules 14a–3 and 14a–9. Rule 14a–9 prohibits the dissemination of proxies that are materially misleading. 17 C.F.R. § 240.14a–9 (1988). The magistrate determined that none of the policies behind the disclosure requirements would have been served by including the information about the Rounds & Porter sale, because: 1) the acquisition was an arms-length transaction; 2) it was a wise business decision on the part of L–P; and 3) Rounds did not profit from the acquisition or participate in the negotiations or the vote.

Because the acquisition did not involve a related party, it was proper for the magistrate to consider whether the sale concerned any self-dealing. We agree with the magistrate that the Rounds & Porter transaction was not material to shareholders voting for the reelection of the Board. Rounds severed all contact with Rounds & Porter in 1966 and obtained no financial benefit by the sale; Rounds did not participate in any of the negotiations; Rounds abstained from voting after the full Board was informed of his "family connection"; the transaction was an arms length transaction; the evidence established that Rounds had not seen Betty Rounds for a number of years and was not close to her; Rounds resigned from the board before the transaction was finalized; and Rounds did not run for reelection to the Board. Under these circumstances, there is no way that "there is a substantial likelihood that a reasonable shareholder would [have] consider[ed] the acquisition important in deciding how to vote" for the directors. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

There is another reason why the fairness of the Rounds & Porter acquisition is relevant to our decision. By the time of this appeal the election had long since taken place. The Supreme Court in *Mills* emphasized that to obtain retrospective equitable relief, such as the rescission of a merger or election, a plaintiff would have to do more than establish a technical violation of the Act. 396 U.S. at 386, 90 S.Ct. at 622. "In devising retrospective relief for violation of the proxy rules, the federal courts should consider the same factors that would govern the relief granted for any similar illegality or fraud. One important factor may be the fairness of the terms of the merger." *Id.; Plaine*, 797 F.2d at 721 ("Fairness may be considered … in determining the form of relief to which the shareholders may be entitled."). In this case, Western has failed to give any equitable reason for this court to order the extraordinary equitable remedy of rescinding the election. Rather, Western argues that it is entitled to such a remedy by merely proving an alleged violation of the Act. The magistrate found that the transaction was beneficial for L–P, and even had we found a technical violation of the proxy rules, that alone would be sufficient to

deny Western's claim for the equitable relief it now seeks.

The judgment is AFFIRMED.