Myron R. **STAHL**, Plaintiff–Appellant,

v.

**GIBRALTAR FINANCIAL
CORPORATION, Defendant–Appellee.**

No. 89–55943.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1992.

Decided June 18, 1992.

Robert H. Bretz, P.C., Marina Del Rey, Cal., for plaintiff-appellant.

Martin C. Washton, Rory M. Hernandez, and Sheila R. Caudle, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

Before: CANBY, KOZINSKI and FERNANDEZ, Circuit Judges.

KOZINSKI, Circuit Judge.

We consider whether a shareholder who receives false or misleading proxy statements must actually have cast his vote in reliance on them as a condition for bringing suit under section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a–9.

### Facts

Myron Stahl owned stock in Gibraltar Financial Corporation; he received an invitation to the company's 1987 annual meeting together with a proxy statement soliciting votes on several proposals for those shareholders unable to attend. One of these was a proposed amendment to the

company's certificate of incorporation, purportedly in response to recent changes in Delaware law, that would insulate Gibraltar's directors from monetary liability. In connection with this proposal, the board of directors represented that it was "not aware of any pending or threatened litigation which would be affected by the approval of [the indemnity amendment]." Joint Proxy Statement/Prospectus at 26.

Stahl sued the corporation in an attempt to forestall the vote at the annual meeting. He alleged that the proxy statement "fails to disclose the existence of certain facts known by management to be relevant to the advisability of [the indemnity amendment]." Complaint at 3. In particular, Stahl alleged that a business of which he was a principal was involved in an ongoing legal dispute with Gibraltar, that Gibraltar's directors knew of this dispute and thus that the quoted representation was false or misleading. *Id.* at 3–7. The district court denied the request for a preliminary injunction and Stahl did not appeal.

The annual meeting took place as scheduled; Stahl showed up in person and voted against the adoption of the indemnity amendment, but the effort was futile: The proposal was adopted by vote of a majority of the shareholders. Stahl's case was still pending in the district court, and several months later Stahl filed an amended complaint seeking to have the corporate action undone. The district court granted Gibraltar's motion for judgment on the pleadings, holding that because Stahl had not voted

his proxy in reliance on the alleged misstatements he had no standing to sue as an individual. Stahl appeals.[1]

## Discussion

False or misleading statements in proxy solicitations are prohibited by section 14(a) of the Securities Exchange Act of 1934 and SEC rule 14a–9.[2] An implied private right of action to enforce the prohibitions of section 14(a) was recognized in *J.I. Case Co. v. Borak,* 377 U.S. 426, 431–32, 84 S.Ct. 1555, 1559–60, 12 L.Ed.2d 423 (1964), and has been reaffirmed in a number of subsequent cases. See *Touche Ross & Co. v. Redington,* 442 U.S. 560, 577, 99 S.Ct. 2479, 2489–90, 61 L.Ed.2d 82 (1979). The Supreme Court has held that section 14(a) "was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970) (internal quotations omitted).

In *Gaines v. Haughton,* 645 F.2d 761, 774 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), we held that "shareholders who do not rely on allegedly misleading or deceptive proxy solicitations lack standing to assert direct (as opposed to derivative) equitable actions under § 14(a)." We derived this bright-line rule from *Klaus v. Hi–Shear Corp.,* 528

1. Since this litigation was commenced, Gibraltar has filed for bankruptcy. This action continues by virtue of a bankruptcy court release from the automatic stay. 11 U.S.C. § 362.

2. Section 14(a) provides in relevant part:
It shall be unlawful for any person ... in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this Act. 15 U.S.C. § 78n(a). It is undisputed that Gibraltar's securities are registered pursuant to section 12, 15 U.S.C. § 78*l.* Rule 14a–9 provides in relevant part:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.
17 C.F.R. § 240.14a–9(a).

F.2d 225 (9th Cir.1975). The *Klaus* analysis merits setting forth at length:

In enacting section 14(a), Congress intended to guarantee the integrity of the processes of corporate democracy. Section 14(a) is intended to insure that a shareholder entitled to vote on corporate decisions knows how his vote will be cast before he grants his proxy to management or others. The harm to be averted is only indirectly that to the individual shareholder. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *J.I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 1559-60, 12 L.Ed.2d 423 (1964). Although a demonstration that proxies were obtained by materially misleading solicitation establishes a violation of section 14(a), the relief available to a plaintiff who did not himself grant a proxy depends on equitable considerations based on "the best interests of the shareholders as a whole." *Mills*, 396 U.S. at 388, 90 S.Ct. at 623.

Klaus did not himself grant a proxy. He is able to assert a section 14(a) violation only derivatively on behalf of Hi-Shear. "[N]othing in the statutory policy 'requires the court to unscramble a corporate transaction merely because a violation occurred.'" *Mills*, 396 U.S. at 386, 90 S.Ct. at 622. Klaus has not demonstrated equitable reasons that would justify rescinding, in effect, the proxies which may or may not have been illegally solicited.

*Id.* at 232.

The *Klaus-Gaines* rule is subject to criticism on several grounds. Section 14(a) states that "[i]t *shall* be unlawful" for any person to solicit proxies in contravention of SEC rules (emphasis added), while rule 14a-9 prohibits all proxy solicitations which are "false or misleading with respect to any material fact." As the Supreme Court noted in *Mills*, "[u]se of a solicitation that is materially misleading *is itself* a violation of law." 396 U.S. at 383, 90 S.Ct. at 621 (emphasis added). The touchstone of a section 14(a) violation is a material misstatement—something "that a reasonable shareholder would consider ... important in de-

ciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). As materiality is an objective standard, it should not matter whether any particular shareholder was actually misled by the challenged misrepresentations.

Moreover, it is somewhat incongruous to deny standing to those shareholders who ferret out the misstatements but grant it to those who were beguiled. Because "[t]he purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," *Borak*, 377 U.S. at 431, 84 S.Ct. at 1559, those shareholders who recognize the deception should be able to sue. The *Klaus-Gaines* rule means that shareholders who see through the deception can never sue to remedy it, because they will not have relied on the misstatements. Catch-22.

The D.C. Circuit has explicitly declined to follow the *Klaus-Gaines* rule. *Cowin v. Bresler*, 741 F.2d 410, 425-29 (D.C.Cir. 1984). Writing for the court, Judge Bork explained that "we find no language in the relevant statutory materials that leads us to conclude that reliance is a prerequisite to standing under [section 14(a)]. Nor is there any Supreme Court decision that directly controls our resolution of the question." *Id.* at 426. The injury of which the *Cowin* plaintiff complained was the election of directors via a misleading proxy statement. As the court noted, "[t]his injury is totally divorced from any reliance, or lack of reliance, on Cowin's part and falls precisely into the scope of injury Congress sought to protect. Requiring reliance in these circumstances would serve no legitimate policy and we decline to do so." *Id.* at 427 (citations omitted); see also *Palumbo v. Deposit Bank*, 758 F.2d 113, 116 (3d Cir.1985) (rejecting reliance requirement in section 14(a) cases).

Perhaps recognizing its shortcomings, we have sharply circumscribed the *Klaus-Gaines* rule. In *Western District Council v. Louisiana Pacific Corp.*, 892 F.2d 1412, 1414 n. 1 (9th Cir.1989), we noted that

"[w]e are bound by our decision in *Gaines*, and decline to reconsider it." Nevertheless, we held that a plaintiff could bring suit *before* the proxy vote:

> If *Gaines* bars Western's suit, then a shareholder who learns of a material omission in a proxy statement before an election could never sue directly, because a shareholder aware of the omission will not rely on the proxy statement when voting. Further, no shareholder could sue before the election, because those shareholders satisfying *Gaines'* requirement that they have relied on the statements would be precisely those who were ignorant of the information necessary to sue until after they voted. Direct action would be available only after the election and only to those shareholders who voted in reliance on the proxy statements. We decline so to limit shareholders' options.

*Id.* at 1415–16; see also *Plaine v. McCabe*, 797 F.2d 713, 717–18 (9th Cir.1986) (shareholder who does not tender stock may nevertheless challenge tender offer under section 14(e)).

The rule in this circuit is thus that a shareholder such as Stahl, who did not rely on the alleged misrepresentations, has standing to bring a direct suit before the vote but not after. The *Western* rationales, however, apply equally to suits brought after the vote occurs. In fact, there seems to be no meaningful distinction between an injured shareholder before the vote takes place and the same shareholder afterwards; defense counsel at oral argument conceded that it's impossible to fix exactly when a plaintiff "loses" standing.

Although the distinctions between *Western* and the *Klaus–Gaines* rule may be somewhat arbitrary, we would be required to decide whether this case is closer to one than the other were it not for the Supreme Court's most recent section 14(a) case, *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). The Court noted: "Although most minority shareholders gave the proxies requested, respondent Sandberg *did not*, and

*after* approval of the merger she sought damages in the United States District Court." 111 S.Ct. at 2756 (emphasis added). Because standing is a threshold question, without which a court is powerless to proceed, Sandberg presumably had standing to bring suit under section 14(a). See, e.g., *Alpine Ridge Group v. Kemp*, 955 F.2d 1382, 1385 (9th Cir.1992). The Fourth Circuit explicitly addressed the reliance issue, holding that plaintiffs who had not relied on the challenged proxy statements could sue thereon. *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1119–21 (4th Cir.1989). Because standing to sue is jurisdictional and was considered by the court below, we take the Supreme Court's consideration of Sandberg's section 14(a) action to mean that a plaintiff may bring a direct action after the complained-of proxy vote even where he has not himself relied on the challenged misstatements. As the Supreme Court's implicit holding in *Virginia Bankshares* is contrary to our opinions in *Klaus* and *Gaines*, we conclude that they have been overruled. Under *Virginia Bankshares*, shareholders such as Stahl who do not vote their proxies in reliance on the alleged misstatements have standing to sue under section 14(a)—both before *and* after the vote is taken.[3]

## Conclusion

Stahl has standing to sue. Accordingly, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

**3.** In light of our disposition, we need not reach Stahl's second contention that he should be permitted to maintain this action as a derivative suit.