**VENETIAN CASINO RESORT, L.L.C.,
a Nevada limited liability
corporation, Plaintiff,**

v.

**Manuel J. CORTEZ, individually and in his official capacity as President of the Las Vegas Convention and Visitors Authority; and the Las Vegas Convention and Visitors Authority, a public entity, Defendants.**

**No. CVS000046PMPLRL.**

United States District Court,
D. Nevada.

May 1, 2000.

Stephen Morris, Las Vegas, NV, Todd Bice, Las Vegas, NV, Matthew McCaughey, Las Vegas, NV, for Manuel Cortez, Las Vegas Convention & Visitors Aut.

J. Peek, Fred Gibson, W. West Allen, Las Vegas, NV, for Venetian Casino Resort, LLC.

*ORDER*

PRO, District Judge.

Presently before this Court is the Motion to Dismiss (# 7) filed by Defendants Manuel J. Cortez ("Cortez") and the Las Vegas Convention and Visitors Authority ("the LVCVA") on February 1, 2000. Plaintiff Venetian Casino Resort, L.L.C. ("the Venetian") filed an Opposition (# 10) on February 25, 2000. Defendants Cortez and the LVCVA filed a Reply (# 12) on March 17, 2000.

## I. BACKGROUND

This is an action for injunctive and declaratory relief seeking to vindicate alleged violations of free speech and petition rights guaranteed under the United States and Nevada Constitutions. The following facts have been alleged by the Venetian.

The LVCVA is a county and fair recreation board seated in Clark County, Nevada. Pursuant to the powers enumerated in Nev.Rev.Stat. §§ 244A.619–.629, the LVCVA promotes gaming and tourism to the southern Nevada area in part through the maintenance and operation of the Las Vegas Convention Center ("the Convention Center"). The Convention Center is one of the largest single level convention facilities in the United States, with more than 1.9 million square feet of meeting and exhibition space. The administration of this facility and other LVCVA activities are funded in part by hotel and gaming tax revenues collected by local municipalities.

On June 8, 1998, the LVCVA proposed a significant expansion of the Convention Center. This expansion was initially to be funded, in part, by a $40–$52 million pledge of prepaid rents from certain trade associations and large trade show planning companies. (Compl.¶ 13.) The Venetian, a hotel and casino located in Las Vegas, Nevada, assailed both the expansion and its financing on the grounds that it was poorly planned and devoid of the allegedly required voter approvals. (Compl.¶¶ 18–19.) At a special meeting of the LVCVA on April 27, 1999, the prepaid rent financing scheme was rejected. (Compl.¶ 21.)

Nevertheless, the LVCVA permitted the Convention Center expansion to proceed, initially under the proposed financing aegis of general obligation and, later, the proposed issuance of special revenue bonds. (Compl.¶¶ 21, 25–32.)

On July 8, 1999, the Venetian filed an action in Nevada state district court against the LVCVA challenging the propriety of the proposed sale of the revenue bonds. The Venetian alleged that the LVCVA's approval of such revenue bonds had violated Nevada's Opening Meeting Laws and had again circumvented required voter approvals. (Compl.Ex. 1.) This action apparently caused the initial buyer of the these bonds, Morgan Stanley, Inc., to withdraw its successful bid. (Compl.¶¶ 69, 71.) After a trial on the merits, the LVCVA prevailed in this state court action. (Compl.¶ 74.)

On November 9, 1999, approximately one month after the issuance of a favorable decision in state district court, the LVCVA again met to discuss the prospects of financing expansion of the Convention Center, which had been delayed by the LVCVA pending resolution of the state court litigation. (Compl.¶¶ 77–82.) At this meeting, the LVCVA approved the issuance of a new set of revenue bonds to be sold by negotiated sale.

On November 12, 1999, counsel for the Venetian sent a letter to the LVCVA ("the November 12, 1999 Letter") suggesting that the LVCVA's actions at the November 9, 1999 meeting might have been procedurally and substantively improper. (Compl. ¶ 85; Defs.' Mot. to Dismiss Ex. B.) The November 12, 1999 Letter urged the LVCVA to provide additional information that might clarify the matter or else face "further litigation" by the Venetian. (Id. at 2.)

On November 15, 1999, the LVCVA responded to the Venetian with a letter of its own ("the November 15, 1999 Letter"). The November 15, 1999 Letter failed to provide the requested information and purportedly threatened "significant legal

repercussions" against the Venetian if its "threat of litigation" was not "withdrawn immediately." (Compl. ¶ 86; Defs.' Mot. to Dismiss Ex. C.)

On December 14, 1999, a meeting of the LVCVA was held. The pre-meeting agenda allegedly stated, in pertinent part:

LITIGATION—AUTHORIZATION TO FILE SUIT—VENETIAN AND OTHERS

The staff of the LVCVA believes that the actions taken by the Venetian in cooperation with others to block the construction of the New South Hall [i.e. the proposed Convention Center expansion] and to disrupt business relationships have been wrongful. The staff hereby requests authorization to file suit(s) against the Venetian and any others who have participated in the Venetian's actions for any and all relevant claims for relief.

(Compl. ¶ 91; Defs.' Mot. to Dismiss Ex. E.) During the meeting, the LVCVA staff, while speaking to the organization's board members, allegedly suggested seeking money damages from the Venetian and others in excess of $30 million for having pursued the prior state court action. (Compl.¶ 92.) Persons present at this meeting allegedly expressed a desire to "chill similar challenges to LVCVA action in the future." (Id.) In particular, the Venetian alleges that Defendant Cortez, the president of the LVCVA, stated that he hoped to "set a precedent" to dissuade future challenges to LVCVA action. (Compl.¶ 93.) Cortez therefore allegedly asked the LVCVA board to delegate to him the authority "to hire appropriate law firms to file any and all appropriate causes of action against the Venetian and others who assisted them in acting in a wrongful manner." (Compl.¶ 92.) After reviewing the matter, the LVCVA board approved the resolution and granted authority to file suit to Cortez. (Compl.¶ 95.)

On January 7, 2000, the Venetian filed a second lawsuit in Nevada state court against the LVCVA. (Compl. ¶ 108; Def.'s Mot. to Dismiss Ex. F.) The Venetian, however, claims that it has refrained from serving the LVCVA with a summons and complaint in that action due to the passage of the LVCVA's resolution authorizing the filing of suit. (Compl.¶ 108.)

Immediately after commencing its second state court action, the Venetian filed this lawsuit in United States District Court. In its Complaint (# 1), the Venetian asserts that its rights to engage in free speech, to petition the government for the redress of grievances and to access the courts, as guaranteed by the First Amendment of the United States Constitution and Article I of the Nevada Constitution, have been infringed. Specifically, the Venetian asserts that the LVCVA resolution "is designed to create a chilling effect and prior restraint" of constitutionally-protected litigation and/or public criticism of the LVCVA. (Compl.¶ 104.) Furthermore, the Venetian asserts that the resolution was passed with the express intent to retaliate against it for the past exercise of its constitutional rights. (Compl.¶¶ 101, 104, 118.) Therefore, in this latest federal action, the Venetian seeks injunctive and declaratory relief from this Court under 42 U.S.C. § 1983, the First Amendment of the United States Constitution, Nev.Rev. Stat. § 41.625 et seq., and the Nevada Constitution. The LVCVA and Cortez (hereinafter referred to collectively as the "Defendants") have moved to dismiss all causes of action asserted against them.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in a plaintiff's complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). The issue is not

whether the plaintiff will ultimately prevail, but whether he may offer evidence in support of his claims. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

■ While a district court must normally ignore those matters that lie outside the pleadings, it may consider: (1) documents physically attached to the complaint, *see Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987); (2) documents of undisputed authenticity that are alleged or referenced within the complaint, *see Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994); and (3) public records and other judicially noticeable evidence, *see Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Pursuant to these standards, this Court will reference the letters, the state court filings and LVCVA agenda announcement attached as exhibits to the Defendants' submissions (Defs.' Mot. to Dismiss Exs. A–C, F) and the Venetian's Complaint (Compl.Exs.1–2). This Court cannot, however, consider the transcript of the December 14, 1999 LVCVA board meeting (Defs.' Mot. to Dismiss Ex. D) due to the Venetian's failure to allege its existence in the Complaint. *See Cooper v. Pickett,* 137 F.3d 616, 623 (9th Cir.1997). Instead, insofar as the comments of LVCVA board members are concerned, this Court will consider only those statements specifically alleged within the pleadings.

## III. DISCUSSION

In order to resolve Defendants' Motion to Dismiss, this Court must determine whether the Venetian's First Amendment claim under 42 U.S.C. § 1983 is justiciable and states a claim upon which relief can be granted. In the event that either of these questions is answered in the negative, this Court must then determine whether it would nevertheless be proper to exercise supplemental jurisdiction over the Venetian's remaining state constitutional claim.

### A. Justiciability of the Venetian's First Amendment Claim

Defendants first request the dismissal of the First Amendment claims asserted against them due to the alleged absence of an actual "case" or "controversy" under Article III of the United States Constitution. Article III's restrictions have been expressed in the distinct, but overlapping, doctrines of ripeness and standing. *See Western Dist. Council of Lumber Prod. and Indus. Workers v. Louisiana Pac. Corp.,* 892 F.2d 1412, 1415 (9th Cir.1989). Under the standing doctrine, a federal court may assume jurisdiction only where a litigant alleges an actual or threatened injury which is not "conjectural" or "hypothetical" in nature. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Lee v. State of Oregon,* 107 F.3d 1382, 1387 (9th Cir.1997). Similarly, the ripeness doctrine seeks to avoid the premature adjudication of abstract issues. *See Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1044 (9th Cir. 1999). In so doing, ripeness "focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement." *Portman v. County of Santa Clara,* 995 F.2d 898, 903 (9th Cir.1993).

■ Here, the Venetian asserts that the allegations within its Complaint outline an actionable case of First Amendment chilling. The Venetian has alleged, in pertinent part, that the November 15, 1999 Letter sent by the LVCVA threatened " 'significant legal repercussions' if the Ve-

netian's 'threat of litigation' was not 'withdrawn immediately.'" (Compl.¶ 86.) The Venetian also reiterates that the resolution purportedly granted to Cortez the authority to "'hire appropriate law firms to file any and all appropriate causes of action against the Venetian and others who assisted them in acting in a wrongful manner.'" (Id.¶ 92.)

While the Venetian concedes that no countersuit, as yet, has been filed by the LVCVA, it argues that "'one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.'" *Bland v. Fessler,* 88 F.3d 729, 736 (9th Cir.1996)(quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Thus, the mere delivery of the threat to countersue or effect adverse results may be sufficient to trigger constitutional scrutiny. *See, e.g., Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir.1976); *Terry v. Village of Glendale Heights,* No. 86 C 4468, 1989 WL 106623, at *5, 13 (N.D.Ill. Sept.13, 1989). Federal courts have been especially disposed to asserting jurisdiction over disputes where the challenged government action allegedly chills conduct protected by the First Amendment. *See LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1156 (9th Cir.2000). These general precepts, however, are not without limits.

 In order to support a claim of unconstitutional "chill," the disputed government act "must be regulatory, proscriptive, or compulsory in nature, and the complainant must be either presently or prospectively subject to the regulations, proscriptions, or compulsions that he or she is challenging." *O'Keefe v. Van Boening,* 82 F.3d 322, 325 (9th Cir.1996) (citing *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). In so-called "threat of prosecution" cases, the distinction has been made between specific and general threats of an intent to commence legal action. *See San Diego County Gun Rights Committee v. Reno,* 98 F.3d 1121, 1127 (9th Cir.1996) (listing cases). On the one hand, specific government warnings of an intent to prosecute under a particular statute may demonstrate sufficiently "imminent" injury to create a justiciable matter. *See, e.g., Culinary Workers Union, Local 226 v. Del Papa,* 200 F.3d 614, 618 (9th Cir.2000) (ripeness) (letter from state attorney general threatening prosecution under quoted state statute unless union ceased distribution of disputed handbill); *Nationwide Auto Club, Inc. v. Department of Commerce and Consumer Affairs,* No. 98–15382, 1999 WL 311446, at *1 (9th Cir. May 11, 1999) (ripeness) (governmental letters accusing plaintiffs' pyramid scheme of violating Hawaiian Uniform Securities Act); *Ripplinger v. Collins,* 868 F.2d 1043, 1047 (9th Cir.1989) (standing) (letter from deputy city attorney ordering claimant to cease distribution of pornography or face prosecution under new obscenity statute). On the other hand, a more generalized threat of prosecution will not suffice to establish justiciability. *See, e.g., Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (standing) (statements by state attorney general of intent to prosecute any offenses against Connecticut law and that use of and advice concerning contraceptives would constitute such offenses); *Rincon Band of Mission Indians v. San Diego County,* 495 F.2d 1, 4 (9th Cir.) (standing) (sheriffs' statements that all gambling was illegal under county ordinance and threat to enforce all city, state, county and federal laws), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

Even after viewing the allegations within the Complaint in the light most favorable to the Venetian, this Court finds that the alleged conduct falls into the latter, non-justiciable category. While the Venetian asserts that Cortez hoped to "'set a precedent' to dissuade future challenges to LVCVA action" by filing countersuits against the Venetian, it concedes that the resolution granted only the legal authority to bring "appropriate causes of action." (Compl.¶¶ 92–93.) The alleged threats of countersuit also apparently lacked any

particularization of legal theory or requested remedy. Instead, according to the Complaint, the LVCVA has merely poised a "threat of litigation" of "significant legal repercussions" if the Venetian does not desist in its attempts to prevent the Convention Center expansion. (Compl.¶ 86.) Such allegations, at best, establish only speculative and arguably chimerical fears. *See Committee for a Sane Nuclear Policy/ Indianapolis Chapter v. City of Indianapolis,* 668 F.Supp. 1211, 1215 (S.D.Ind.1987) (rejecting claim of First Amendment chilling on standing grounds, notwithstanding municipality's general threat of legal action and passage of resolution requesting pursuit of suitable legal remedies against plaintiff). This Court therefore finds the alleged unconstitutional disincentive to speech and court access to be too speculative, under the facts as currently alleged, to support the assertion of federal jurisdiction. *See Russell v. Burris,* 146 F.3d 563, 572–73 (8th Cir.1998) (declining to adjudicate First Amendment challenge to statute authorizing limitation of campaign contributions in absence of its actual use by local governments); *Poland v. Stewart,* 117 F.3d 1094, 1104 (9th Cir.1997)(noting that matter is not ripe for review where existence of dispute itself hangs on uncertain future contingencies).

### B. Statement of an Alleged First Amendment Violation

Even assuming *arguendo* the existence of a justiciable controversy, this Court alternatively grants the LVCVA's Motion for dismissal of allegations of a First Amendment violation due to the Venetian's failure to state a claim upon which relief can be granted. The substance of the Venetian's allegations implicate at least two different strands of the First Amendment. On the one hand, there exists a constitutional right of meaningful access to the courts. *See Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983); *WMX Technologies, Inc. v. Miller,* 197 F.3d 367, 372 (9th Cir.1999). On the other hand, a "manifest function of the First Amendment in a rep-

resentative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd,* 385 U.S. 116, 136, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). Under the facts as alleged in the Complaint, this Court finds that the latter strand of the First Amendment would hold preeminence.

The First Amendment states, in pertinent part, that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "Deliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983." *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989) (citations omitted). This is because "[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986).

However, another "central commitment" of the First Amendment is the protection of " 'uninhibited, robust, and wide-open' " debate of public issues by elected legislators. *Bond,* 385 U.S. at 136, 87 S.Ct. 339 (quoting *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). While fair and recreation boards such as the LVCVA are comprised of both elected and unelected officials and representatives of private industry, *see* Nev.Rev.Stat. §§ 244A.599–.603, this Court sees no reason to deny them the same voting and debate protections granted to wholly elected legislative bodies. Several courts have reached identical conclusions. *See Stella v. Kelley,* 63 F.3d 71, 76 (1st Cir.1995) (refusing to create "a wholly artificial dichotomy" between free speech protections possessed by elected and non-elected municipal officials); *Brewer v. District of Columbia Fin. Responsibility and Management Assistance Auth.,* 953 F.Supp. 406, 410 (D.D.C.1997) (declining to create distinction between legislative and administrative votes for

purposes of First Amendment), *aff'd,* 1997 WL 661802 (D.C.Cir. Sept.19, 1997).

▮ With these precepts in mind, it is instructive to review the Sixth Circuit Court of Appeal's decision in *Zilich v. Longo,* 34 F.3d 359 (6th Cir.1994). There, a small town mayor and other local officials passed a resolution and ordinance both "expressing the disapproval and outrage of the council" against a former city council member and authorizing the municipal law director to take whatever necessary legal action against him to recover his allegedly illegitimate salary. *See id.* at 364. The *Zilich* court held that no First Amendment chilling could arise from such acts, observing that:

> Congress frequently conducts committee investigations and adopts resolutions condemning or approving of the conduct of elected and appointed officials, groups, corporations and individuals. Members often vote to do so, at least in part, because of what the target of their investigation or resolution has said or for purely partisan and ideological reasons. The First Amendment [however] is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions.

*Zilich,* 34 F.3d at 363. This Court finds such reasoning to be persuasive authority to the resolution of the parties' dispute.

Applying the *Zilich* standard to the case at hand, the Court finds that it would be improper to censure the LVCVA for the allegedly brusque words spoken of the Venetian during LVCVA meetings. While the resolution and the debates leading up to its passage may have at least implicitly labeled the Venetian's state court litigation as being "wrong" or ill-founded, their tenor and content distinctly fall within the purview of acceptable quasi-legislative partisanship. To decide otherwise would fatally muzzle the vigorous discourse central to the formulation of public policy. Moreover, this Court notes that the power to bring suit is an explicitly enumerated power of county and fair recreation boards. *See* Nev.Rev.Stat. § 244A.619(10). Exposing the LVCVA to possible liability solely for their voting decision to authorize the pursuit of this duly-apportioned power would directly attack protected official speech. Accordingly, the Venetian's free speech and right to petition claims under 42 U.S.C. § 1983 cannot be sustained under the current allegations on these separate legal grounds as well and will be dismissed.[1]

## C. Alleged Violations of Nevada Constitution

▮ Having disposed of the Venetian's requests for injunctive and declaratory relief under the United States Constitution, this Court must next consider the viability of the Venetian's state constitutional right to petition and free speech claims under Nev.Rev.Stat. §§ 41.635–.670. (Compl.¶¶ 113–124.) A district court has the discretion to exercise supplemental jurisdiction over state constitutional claims even in the event of the dismissal of all related federal claims. *See* 28 U.S.C. § 1367; *Binder v. Gillespie,* 184 F.3d 1059, 1066 (9th Cir.1999). Nevertheless, "[p]rinciples of federalism implicit in the United States Constitution dictate that, whenever

---

1. That is not to say, however, that the LVCVA necessarily possesses an impervious shield to all future First Amendment scrutiny. The distinction must be made here between a resolution to countersue formulated by quasi-legislative actors in a policy-making debate and the actual filing of such suits or the commission of other acts of alleged harassment in non-legislative settings. Thus, for example, the Venetian correctly notes that courts from other jurisdictions have held that a governmental entity's filing of counterclaims in a retaliatory attempt to deter the exercise of a litigant's First Amendment rights might be actionable under 42 U.S.C. § 1983. *See, e.g., Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 31 (2d Cir.1996); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1424 (8th Cir.1986). This Court, however, will decline to approve or disapprove of these respective holdings due to the absence of the alleged existence of an active countersuit.

possible, state courts should be given the opportunity to interpret their state constitutions." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 963 F.Supp. 395, 408 (D.N.J.1997). Hence, this Court finds it appropriate to dismiss the Venetian's second claim for relief as well.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Motion to Dismiss (# 7) filed by Defendants Manuel J. Cortez and the Las Vegas Convention Authority is GRANTED. All allegations asserted against these Defendants by Plaintiff Venetian Casino Resort, L.L.C. are hereby DISMISSED.